IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DAVID L. SAWYER                                                                                           PLAINTIFF

vs.                                         Civil No. 3:08-cv-03002

MICHAEL J. ASTRUE                                                                                    DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

David L. Sawyer ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and a period of disability under Titles II and XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

## 1. Background:

Plaintiff protectively filed his applications for DIB and SSI on April 22, 2003.[2]  (Tr. 12, 95-

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

[2] Plaintiff previously filed applications for DIB and SSI in 1995 and 1997.  (Tr. 31-41, 92-94).  These applications were denied.  *See id.*

98). Plaintiff alleged he was disabled due to depression and back and neck pain. (Tr. 106, 413-414). Plaintiff alleged an onset date of December 1, 1997. (Tr. 12, 95-98). These applications were initially denied on October 27, 2003 and were denied again on reconsideration on May 19, 2004. (Tr. 42-45, 57-61, 65-68).

On July 1, 2004, Plaintiff requested an administrative hearing on his applications. (Tr. 69-71). Specifically, Plaintiff requested a hearing by stating the following: "I am disabled and unable to perform substantial gainful activity given my age, education and work experience, by reason of physical and mental impairments." (Tr. 69). This hearing was held on April 12, 2007 in Harrison, Arkansas. (Tr. 405-426). Plaintiff was present and was represented by counsel, Rick Spencer, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Tanya Owen testified at this hearing. *See id.*

On April 25, 2007, the ALJ entered a partially favorable decision on Plaintiff's applications for DIB and SSI. (Tr. 9-24). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 1999. (Tr. 14, Finding 1). The ALJ also determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since December 1, 1997, his alleged onset date.[3] (Tr. 15, Finding 2). The ALJ determined Plaintiff had the following severe impairment: depression. (Tr. 15-18, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 18, Finding 4).

---

[3] The ALJ did note, however, in his hearing decision, that Plaintiff had worked as a courier from 1998 until 2002. (Tr. 15). However, the income from this job was not reported. *See id.*

2

The ALJ determined Plaintiff was thirty-eight (38) years old on his alleged onset date, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2008). (Tr. 22, Finding 9). The ALJ determined Plaintiff had at least a high school education and was able to communicate in English. (Tr. 22, Finding 10).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his Residual Functional Capacity ("RFC"). (Tr. 18-21, Findings 5-7). However, instead of assessing Plaintiff's RFC for the entire time period from his alleged onset date to the date of the ALJ's hearing decision, the ALJ assessed Plaintiff's RFC for two separate time periods: prior to April 22, 2003 and after April 22, 2003. *See id.* First, the ALJ assessed Plaintiff's RFC prior to April 22, 2003 as follows:

> After careful consideration of the entire record, the undersigned find that, prior to April 22, 2003, the claimant had the physical residual functional capacity to perform activities as demonstrated in the Disability Determination Services Initial and Reconsideration Determination dated November 25, 1997. Specifically, this determination states that per a medical source statement from Dr. Stansfield dated August 12, 1997; the claimant is disabled due to chronic back pain and depression. However, a letter from Dr. Stansfield dated June 11, 1997 states the claimant is disabled secondary to chronic low back pain and cannot lift greater than 30 pounds, carry greater than 10-15 pounds, cannot stand for long periods and cannot continue in his usual job of carpentry. State agency examiners further note that Dr. Stansfield's opinion is not supported by the objective evidence in the file, which includes a normal MRI of the lumbar spine and a small disc bulge at T7-8 with x-rays showing only very small anterior spurs off L4. The claimant's credibility is somewhat questionable as complaints and alleged limitations far exceed objective findings. After review of the file, the State Agency Examiners determined the claimant's physical condition is non-severe and the initial decision is affirmed (Ex. B-7F). From a mental standpoint, the claimant is able to understand and follow simple instructions, able to sustain concentration and persistence with simple tasks, and is able to adapt to environment, and interact socially. The claimant would be capable of performing simple, repetitive jobs (Ex. B-6F).

(Tr. 18-19, Finding 5). The ALJ also stated that, in assessing Plaintiff's RFC prior to April 22, 2003, he was "forced to rely upon the opinion of the State Medical Examiners." (Tr. 19).

3

>Second, the ALJ assessed Plaintiff's RFC after April 22, 2003 as follows:
>
>Beginning April 22, 2003, the claimant had the residual functional capacity to lift and carry 25 pounds frequently and 50 pounds occasionally; push/pull 25 pounds frequently and 50 pounds occasionally; stand/walk/sit for 6 hours out of an 8-hour workday; and no postural limitations. He is limited in his ability to perform gross manipulations with the left wrist to perform only occasional frequent rapid, repetitive flexion/extension of the left wrist to perform only occasional frequent, rapid repetitive flexion/extension of the left wrist. He is unable to complete a normal workweek without interruptions from depressive symptoms that significantly interfere with the claimant's ability to maintain and sustain employment on a regular and full-time basis.

(Tr. 19-21, Finding 6).

The ALJ also evaluated Plaintiff's Past Relevant Work ("PRW") and determined whether he could still perform that work or other work existing in significant numbers in the national economy. (Tr. 21-23). First, the ALJ determined Plaintiff had PRW as a carpenter. (Tr. 21, Finding 8). The ALJ determined that Plaintiff's RFC for both time periods–prior to April 22, 2003 and after April 22, 2003–precluded him from performing this PRW. *See id.*

Second, the ALJ determined whether Plaintiff's RFC before or after April 22, 2003 precluded him from performing other work existing in significant numbers in the national economy. (Tr. 22-23, Finding 12). The ALJ determined that his RFC prior to April 22, 2003 did not preclude him from performing other work, but his RFC after April 22, 2003 did preclude him from performing other work. *See id.* Specifically, the ALJ determined that, prior to April 22, 2003, Plaintiff could perform work as either (1) a machine coin collector/driver (unskilled, light), with 1,800 such jobs in Arkansas and 100,000 such jobs in the United States or (2) a fast food worker (unskilled, light) with 19,000 such jobs in Arkansas and 116,000 such jobs in the United States. (Tr. 22-23, Findings 12-13). Based upon these findings, the ALJ determined Plaintiff was not disabled prior to April 22, 2003 but became disabled on that date and continued to be disabled through the date of the ALJ's

decision. (Tr. 23, Finding 14). The ALJ also determined that Plaintiff was not under a disability within the meaning of the Act at any time through December 31, 1999, his date last insured. (Tr. 24, Finding 15). Finally, the ALJ determined that Plaintiff's substance use disorder was not a contributing factor material to the determination of disability. (Tr. 24, Finding 16).

On June 8, 2007, Plaintiff requested that the Appeals Council review the ALJ's partially favorable decision. (Tr. 6). *See* 20 C.F.R. § 404.968. On October 25, 2007, the Appeals Council declined to review this decision. (Tr. 3-5). On January 2, 2008, Plaintiff filed the present appeal. (Doc. No. 1). The parties consented to the jurisdiction of this Court on April 8, 2008. (Doc. No. 4). Both parties have filed appeal briefs. (Doc. Nos. 6-7). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the ALJ erred by finding Plaintiff was disabled on April 22, 2003 but was not disabled prior to April 22, 2003. (Doc. No. 6). Specifically, Plaintiff claims the following: (1) the ALJ erred by finding that Plaintiff's physical impairments were non-severe and (2) the ALJ erred by finding that Plaintiff's disability due to depression did not begin until April 22, 2003. *See id.* at 1-20. Plaintiff argues that the medical records from both his treating physician and his consulting physicians support his claims. *See id.*

In response, Defendant argues the following: (1) the ALJ properly found Plaintiff had the RFC for significant work activity prior to the expiration of his insured status for DIB on December 31, 1999, (2) the ALJ properly evaluated Plaintiff's subjective complaints during the relevant period of time through December 31, 1999, and (3) the ALJ fully and fairly developed the record. (Doc. No. 7, Pages 1-13). Because this Court finds that both of Plaintiff's claims are merited and because both issues are important in this case, this Court will address both of Plaintiff's arguments.

    **A.**    **Plaintiff's Medical Records**

With his request for disability benefits, Plaintiff submitted medical records dating from 1991 until 2006. However, because the ALJ found Plaintiff was disabled beginning on April 22, 2003, this Court will only address the medical records dated *prior to* that date. Specifically, during that time period, Plaintiff received medical treatment from or was examined by the following sources: (1) Dr. David J. Stansfield, (2) Dr. Michael J. O'Day at the Missouri Baptist Medical Center, (3) Dr. Jean Jose, Ph.D., and (4) Barnes Hospital in St. Louis, Missouri. (Tr. 235-261, 287-290). This Court will discuss the relevant medical records from each of these sources.

      **(1)    Dr. David J. Stansfield**

From March 31, 1991 until April 8, 2003, Plaintiff was treated by Dr. David J. Stansfield, D.O.[4] (Tr. 243-256, 287-290). On July 22, 1994, Dr. Stansfield reported that Plaintiff had injured himself in the fall of 1993 "after lifting a heavy tire while helping on a farm" and that the Plaintiff "has had low back pain ever since the injury." (Tr. 251). Dr. Stansfield also reported on that date that, in his opinion, Plaintiff was "currently disabled and unable to work due to his ongoing back pain." *See id.* On July 6, 1995, Dr. Stansfield reported that Plaintiff suffered from "[c]hronic low back pain, exacerbated in August of 1993 when lifting a tire on to a tractor at home." (Tr. 249).

On August 23, 1995, Plaintiff reported continued lower back pain, and Dr. Stansfield diagnosed Plaintiff with chronic lower back pain and depression. (Tr. 249). Dr. Stansfield prescribed Plaintiff Darvocet and Zoloft. *See id.* On June 11, 1997, Dr. Stansfield completed a treating physician's social security disability form. (Tr. 246-247). As noted on that form, Dr. Stansfield found Plaintiff could not lift more than 30 pounds, could not carry objects over 10-15 pounds, could not stand for long periods of time, and could not work as a carpenter. *See id.*

Thereafter, on August 12, 1997, Dr. Stansfield reported that Plaintiff continued to suffer from chronic lower back pain. (Tr. 245). Dr. Stansfield reported that Plaintiff was "also getting some mid thoracic pain and occasional cervical spine stiffness and pain with secondary headaches." *See id.* Also on that date, Dr. Stansfield reported that Plaintiff suffered from depression, which he believed was secondary to Plaintiff's chronic pain and that it was his "feeling that Mr. Sawyer does have disability due to his chronic pain as well as depression." (Tr. 244).

On July 22, 1999, Dr. Stansfield examined Plaintiff and noted Plaintiff's "low back pain is

---

[4] A number of the medical records from Dr. Stansfield are not legible. Accordingly, this Court will only summarize the medical records from Dr. Stansfield that can be deciphered.

gradually getting better." (Tr. 289). Dr. Stansfield found Plaintiff suffered from osteoarthritis of the mid thoracic spine, "gradually improving" lower back pain, and depression. *See id.* Dr. Stansfield continued Plaintiff on Zoloft and Ibuprofen. *See id.* On April 17, 2001, Dr. Stansfield examined Plaintiff again and noted that Plaintiff "does continue to have some low back pain of a chronic nature." *See id.* Dr. Stansfield found Plaintiff suffered from lower back pain and chronic depression. *See id.* Dr. Stansfield continued Plaintiff on Zoloft and prescribed Darvocet. *See id.*

On May 13, 2002, Dr. Stansfield found Plaintiff still suffered from chronic lower back pain and chronic depression. (Tr. 287). Dr. Stansfield continued Plaintiff on Zoloft and Darvocet. *See id.* On April 8, 2003, Dr. Stansfield examined Plaintiff and noted that he presented "with a flare of his back pain." (Tr. 287). Dr. Stansfield found Plaintiff suffered from a lumbar strain and chronic lower back pain. *See id.* Dr. Stansfield continued Plaintiff on Zoloft and prescribed Naproxen and Cyclobenzaprine. *See id.*

### (2) Dr. Michael J. O'Day

On July 29, 1997, Plaintiff was evaluated by Michael J. O'Day from the Missouri Baptist Medical Center as a part of a consultative evaluation. (Tr. 235-239). Dr. O'Day noted that Plaintiff reported having problems with "headaches, leg and back pain as well as manic-depressive disorder." (Tr. 235). With regard to Plaintiff's back pain, Dr. O'Day diagnosed Plaintiff with "lumbar strain, intermittent, without features of compressive neuropathy." (Tr. 237). Dr. O'Day, however, found Plaintiff had few limitations in his ability to lift and carry. *See id.* Specifically, Dr. O'Day only found the following limitations:

> I feel within a reasonable degree of medical certainty this gentleman could lift and carry fifty pounds at least on an occasional basis and stand and walk a total of six to eight hours a day and that there are not applicable limitations in terms of postural maneuvers about the waist. This is based on his information today as well as the

information gained from his physical examination.

(Tr. 237).

### (3) Dr. Jean Jose, Ph.D.

On August 8, 1997, Dr. Jean Jose, Ph.D. examined Plaintiff during a psychological consultation and examination. (Tr. 240-242). Dr. Jose reported that Plaintiff's "allegation of disability is: severe, chronic, intractible back, neck, and leg pain, headaches, major depressive disorder." (Tr. 240). After examining Plaintiff, Dr. Jose found that Plaintiff suffered from "major depressive disorder, recurrent" and had a GAF score of 50.[5] (Tr. 242).

### (4) Barnes Hospital

From October 14, 1997 to October 20, 1997, Plaintiff was treated at Barnes Hospital in St. Louis, Missouri. (Tr. 257-261). During this treatment, Plaintiff underwent an MRI of his lumbar spine and thoracic spine. (Tr. 258). The radiologist found Plaintiff had a "normal lumbar spine" MRI and his thoracic spine MRI demonstrated "small T7-8 posterior right focal disc bulge, osteophyte complex, resulting in minimal effacement fo the thecal sac." *See id.*

### B. Plaintiff's Severe Impairments

In his appeal brief, Plaintiff argues that the ALJ erred by finding that he only suffered from the severe impairment of depression. (Tr. 15-18, Finding 3). A claimant suffers from a severe impairment if that impairment is more than slight and if that impairment affects the claimant's ability to do his or her basic work activities. *See Householder v. Bowen,* 861 F.2d 191, 192 n.1 (8th Cir. 1988). The Supreme Court has also held that a claimant does not suffer from a severe impairment

---

[5] Dr. Jose also noted that Plaintiff suffered "[b]ack, neck and leg pain (by report)." (Tr. 242). However, Dr. Jose is a psychologist who specializes in the treatment of mental disorders, not physical disorders such as back, neck, and leg pain. *See id.* Accordingly, his assessment of Plaintiff's back, neck, and leg pain is entitled to little weight.

where the claimant only suffers from "*slight abnormalities* that do not significantly limit any 'basic work activity.'" *See Bowen v. Yuckert,* 482 U.S. 137, 155 (1987) (O'Connor, S., concurring) (emphasis added); *see also Brown v. Bowen,* 827 F.2d 311, 311-12 (8th Cir. 1987) (adopting Justice O'Connor's language from *Bowen v. Yuckert*).

As noted by the Eight Circuit, the standard for determining whether a claimant suffers from a severe impairment is a low or *de minimis* standard. *See Nicola v. Astrue,* 480 F.3d 885, 887 (8th Cir. 2007) (reversing the decision of the ALJ and holding that a diagnosis of borderline intellectual functioning should be considered severe when that diagnosis is supported by sufficient medical evidence); *see also Miller v. Astrue,* No. 05-4409, 2007 WL 1452966, at *1 (8th Cir. May 18, 2007). Furthermore, if the ALJ errs by finding a severe impairment is not severe, the ALJ's disability determination must be reversed and remanded. *See Nicola,* 480 F.3d at 887.

In the present action, Plaintiff suffers from chronic lower back pain. (Tr. 235-261, 287-290). As noted in Plaintiff's medical records, he was treated by Dr. Stansfield over the course of a decade for that chronic back pain. (Tr. 243-256, 287-290). The medical records indicate that Plaintiff initially injured his back in 1993 after he lifted a heavy tire while working on a farm. (Tr. 251). Thereafter, throughout Dr. Stansfield's treatment of Plaintiff, Plaintiff reported suffering from chronic back pain. On June 11, 1997, Plaintiff reported continued lower back pain, and Dr. Stansfield found Plaintiff was limited in his ability to lift and carry due to his back pain. (Tr. 246-247). On August 12, 1997, Dr. Stansfield even reported that he was "feeling that Mr. Sawyer does have disability due to his chronic pain as well as depression." (Tr. 244-245). As late as April 8, 2003, Plaintiff reported suffering from a "flare" of back pain that was significant enough to require medical treatment. (Tr. 287).

While these medical records alone might not establish that Plaintiff is *disabled* due to his

lower back pain, these records do provide sufficient evidence to satisfy the low or *de minimis* standard for a severe impairment. *See Nicola v. Astrue,* 480 F.3d at 887. Because Plaintiff's medical records establish that he suffers from a severe physical impairment due to his back pain and because the ALJ erred by not finding Plaintiff's back pain to be a severe impairment, this case must be reversed and remanded.

### C.     Plaintiff's Onset Date

Plaintiff claims the ALJ erred by failing to comply with SSR § 83-20 in evaluating the onset of his disability. (Doc. No. 6, Pages 18-20). In evaluating a claimant's alleged disability, the ALJ should determine the claimant's onset date. According to SSR § 83-20, the starting point for evaluating a claimant's onset date is the claimant's statement as to when disability began. Then, the ALJ should review the claimant's work history, medical evidence, and other evidence to determine the claimant's onset date. As noted in SSR § 83-20, "the date alleged by the individual should be used if it is consistent with all the evidence available." However, if the claimant's allegations, work history, medical evidence, and other evidence does not provide an exact onset date, the ALJ will need to infer the onset date. Where such an inference is necessary, the ALJ "should call on the services of a medical advisor."

In this case, Plaintiff alleged his onset date to be December 1, 1997. (Tr. 12). However, despite this alleged onset date, the ALJ found Plaintiff's onset date to be April 22, 2003. (Tr. 18-19, Finding 5). The date is not found in Plaintiff's application, her work history, or medical records or other evidence.[6] Therefore, in this case, the ALJ was required to *infer* the onset date. However, contrary to SSR § 83-20, the ALJ did not "call on the services of a medical advisor" in order to

---

[6] April 22, 2003 is, however, the date Plaintiff applied for SSI.

12

ascertain this date. Instead, the ALJ appears to have merely made an "educated guess" as to Plaintiff's alleged onset date. Pursuant to SSR § 83-20, this is not permitted. As such, the ALJ erred in evaluating this onset date, failed to follow SSR § 83-20, and this case must be reversed and remanded such that the ALJ can reassess Plaintiff's onset date.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this 30th day of April, 2009.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE